Good morning, Your Honor. Good morning. I'm going to reserve five minutes for rebuttal. There was an article in the paper... Could you identify yourself? I'm sorry, Mayor Westreich for the appellants. Thank you. Most important. There was an article in the newspaper over the weekend talking about something going on in Florida where They were saying the storyline was there was an odd alliance of utilities and some public interest civil rights groups like NAACP who were opposing efforts by the local agencies and the state agencies in Florida to promote renewable energy sources like energy from solar panels and things like that on the grounds that it increased the cost of energy because the utilities had to pay a bit more money than would otherwise be the case. And now on its face, it would seem that were true that that's contrary to the mandate of PURPA which is to protect consumer prices, bring it down if possible. However, as the Supreme Court recognized when it approved an early FERC rule in the case American Paper Institute it pointed out that sometimes a short-term increase of cost can be offset over time by long-term reductions and that the use of renewable energy could be perceived by FERC in other words within its administrative discretion to produce over long-term the reduction in energy costs for everybody, consumers. Now that may not be very pleasant in the very short term to a consumer who has to pay a little bit more today or maybe next year but the government is making decisions which will over long-term and we can possibly see some of the effect of that now. Everybody is marveling at how the cost of oil and gasoline has gone down so radically recently and there is a variety of reasons but at least part of the reason is the significant increase in renewable energy sources that have been adopted under... Your policy arguments are intriguing and relevant at some level but I'd appreciate it if you would speak to some of the specific rulings that happened here. In particular, I'm interested in your comments on the district court's conclusion that 1983 claims for purple violations are barred because of the comprehensive regulatory scheme under the federal law. What is your position on that ruling? Well, it's interesting. The court actually said that there was elaborate and complex. It didn't really... The word comprehensive appeared there sort of in there but its real argument was... and it's not really comprehensive and comprehensive, it's not comprehensive for several reasons. Number one... Whether it has to be comprehensive or not, why isn't the federal remedial system the only available system? I'll just ask it more neutrally in that way. Because comprehensive is a touchstone. If there is a comprehensive remedy, remedial system, then it's implied that Congress intended not to allow the use of 1983. Remember, if it's explicit, then that's the end of the discussion. It's a congressional intent analysis. And it is the presence of comprehensive remedial scheme that implies that. But it cannot be comprehensive if there's one huge gap in its remedial process. And that is that PURPA does not regulate or enforce its rules against regulated utilities. It's a very odd thing. It specifically provides that it regulates the state utilities and it regulates the non-regulated public utilities. The theory being that the regulated public utilities will be regulated by the state utility commissions and that FERC will then be able to enforce that by compelling them to do... That's what I was going to ask you. It might not be self-enforcing, but FERC is charged with enforcing that and mandating that the state public utilities... Right. So that means, though, that an injured person has no remedy under PURPA against a regulated utility, even if the regulated utility is the one that's causing the harm. If the regulated utility is... Is that a necessity if there is another entity that has the ability to enforce the statute? If the problem that the private individual or company is dealing with is a collusion between the public entity and the regulated utility, which, by the way, was one of the underlying purposes of PURPA, was a recognition that that existed, that there was too cozy a relationship between those utilities and the utility commissions, and that has persisted. We just had a whole blast of news about these radical turnover in the staff over at Edison because it turned out they were engaged in highly questionable collusive behaviors with SDG, San Diego Gas and Electric. That is a problem when you have a near monopoly, which is what you have. It's not truly a monopoly, but it's a managed market because there's always only one utility in any one given area, and you have a utility where you have a revolving door between those utilities and who sits on the commission that regulate them. And so when the problem is, as we alleged in our complaint here, that there was a collusive problem between the PUC and the entities, the utilities, when that is the problem, there is no remedy under PURPA. If we were to disagree with you on that, and I understand, of course, that you don't concede that, but if we were to hold that the remedial scheme under PURPA forecloses individual actions under Section 1983, would that holding pertain to every one of your claims, or would there be any additional claims that would still remain viable? Well, obviously the ones that are directly under the Constitution would not be governed by that determination. Your First Amendment claims. And the takings claim. And also you do claim, although the court determines that you were jurisdictionally barred from pursuing it, you do have several claims that PURPA was violated by the commission. Correct. So those claims, if we were to hold that the statute of limitations is not jurisdictional, those claims would remain viable. Correct. And one of the other absences in the scheme, the PURPA scheme, is there is no provision for damages. And sometimes after the injury is already done, maybe you can go and get an order compelling the PUC to finally do its job, but what if you've devastated a company in the interim? There is no damages remedy under PURPA either. Now the district court said, well, that was part of Congress's intent, that there would only be limited remedies for violations of PURPA. In this case, Congress did not express an intent, so we have to use the rule. If there is a comprehensive scheme, then it is implied that that's what Congress intended. Well, not necessarily. There's a whole raft of cases that talk about how to determine whether a private right of action for damages lies under a federal statute. And it isn't at all automatic just because there may not be some other remedy. Well, I'm not saying that if there – I agree that the mere absence of a remedy that might be available under 1983 doesn't in and of itself. The question is whether or not it's comprehensive. Now, there's not a lot of case law. There's not any – there's just a few cases every once in a while that refer to it and then to say sometimes yes. I mean, the Carlson v. Green case said that it was not comprehensive, the FTA, and so they allowed 1983 in that situation. And, you know, a person could look at the FTA and say today, maybe if it was – you might have a different opinion today. But when Carlson v. Green was decided, they decided it wasn't comprehensive enough, so it didn't preclude 1983. And so you have a situation where ultimately,  But I don't think the word complex can be substituted for comprehensive. Or elaborate doesn't do it. I think comprehensive means, if you look it up in the dictionary, that it really gives you remedies against the bulk of the things that are of grave importance and that you're going to have an effective remedial scheme. I think at minimum, comprehensive has to mean that you have reasonably effective remedies available for the primary purposes of the law. And so if the primary purpose – one of the primary purposes of the law was the regulation of the private utilities, and you have a problem that arises where the state is not doing its job, there's a collusion, you have a claim against both of them, but you cannot really do anything with PERPA except to say, order them to do it. And in the interim, there's this devastating damage inflicted on private entities who are struggling to do it and bearing the burden of forcing the state to do what the federal government has ordered it to do, but declines to do. What is the measure of damages that you're talking about? The lost income that they would have incurred had they been given the ability to operate under the avoided cost standard that is adopted by FERC. Okay. You're using your rebuttal time, which you were entitled to do. No, I think I'll save the rest of the rebuttal time. There's a few things I might want to say after counsel has something to say. Okay. Thank you very much. We'll hear from Ms. McQuillan. Good morning, Your Honors. Elizabeth McQuillan for the California Public Utilities Commission and its individual commissioners. I'd first like to address the question that you raised with respect to the 1983 claim based on violation of PURPA. I respectfully disagree with counsel that PURPA does not provide a remedy against regulated utilities. In Section 210G of PURPA, Congress specifically allowed an action to be brought against regulated utilities in state court. That is the remedy that is allowed by PURPA. Section 210H is specific to the remedies allowed in the federal district court. Counsel also referred to one of the purposes of implementing PURPA was to prevent the alleged collusive behavior between utilities and state commissions. I respectfully disagree with that as well. One of the purposes of PURPA was to prevent state commission regulation of qualifying facilities as utilities to allow them to foster this new industry. Counsel also referred to the Carlson v. Green case. In that case, unlike in this instance, there was specific congressional history that indicated that Congress intended to allow a 1983 claim for a Bivens claim as opposed to the Federal Torts Claim Act being the sole remedy. Let me ask you this. For the purpose of this question, I want you to assume that we would hold that the failure to exhaust administrative remedies is not jurisdictional in the true sense, that it's a claim processing rule but not a jurisdictional rule. What would be the result of that holding in your view with respect to the claims in the, I guess, second amended complaint? In other words, what claims would survive, if any, if that is not jurisdictional? In the second amended complaint? Well, in whichever is the first amendment. So the first amended complaint had the claims for the 1983 violations and for enforcement of PURPA. I probably asked the question inartfully, but if we were to disagree with the district court on the jurisdictional piece of that and on the failure to exhaust, would there be any viable claims that would have to return to the district court for further processing, and if so, what would they be? If you were to disagree on that basis, you could also dismiss that PURPA claim on the merits for failure to state a claim. I'm sorry, but that isn't what the district court did, right? That's correct. And in fact, the district court said, dismissed it with prejudice, but later said, reworded it, but he dismissed it with prejudice. If we disagreed that it was jurisdictional, wouldn't we have to reverse with prejudice and allow them to amend their complaint? So if that were the case, then we couldn't then go on to say they didn't state a claim when the error by the district court was that he dismissed it with prejudice on his erroneous assumption that the 60-day statute was jurisdictional. What the district court held was that the PURPA claim, as stated in the first amended complaint, did not state a claim because there was no allegation of any violation of PURPA. The allegations were too ambiguous and conclusory. I think we might be talking past each other. Okay. To what extent did the district court rely on its characterization of the failure to exhaust as jurisdictional in coming to a conclusion on certain of the claims? I guess what I'm hearing you say is that there may have been alternative grounds either presented to the district court or relied on by the district court. But what would be the alternative justification for dismissal with prejudice of those particular claims? For the PURPA claim or for the additional claims? For any of the claims as to which the district court said you have failed to exhaust. That is specific to the PURPA claim. Okay. And so what is the alternative ground for dismissing that claim with prejudice that was presented to the district court that would provide, if anything does, an alternative ground for affirmance? Failure to state a claim. But why would that be with prejudice? Because the plaintiff had already once amended its complaint and there was nothing alleged or nothing argued to demonstrate any viable claim. In theory, is there a viable claim that could be stated? I don't believe so. Why not? If you look at their reply brief, they reference the across-the-board failure to implement PURPA. We requested that the district court take judicial notice of a variety of our decisions in which the CPUC has invoked its power under PURPA in implementing specific programs. The first amended complaint did not attack any of those specific programs by name in any articulate way. The allegations are a textbook example of what is prohibited by Iqbal and Trombley. In the reply brief, they also allege that the avoided cost rates set by the PUC do not allow the recovery of capital costs by the qualifying utilities. This turns PURPA on its head because what defines avoided cost is not the cost of the qualifying utility but the cost avoided by the utility in either generating the power itself or purchasing it from another source. They also claim that the interconnection standards had not been enforced by the PUC. The second amended complaint makes clear, if you look at those allegations, that the plaintiffs, Robert Saave and Michael Boyd's rooftop solar facilities had been interconnected for over 10 years. And there are no allegations in the complaint to substantiate any delays in interconnection by utilities. They also complain in the reply brief about contract weasel clauses. I'm not quite sure what that means, but FERC's regulations are very specific that state commissions have wide latitude in defining the contractual terms for avoided cost contracts. And there is no regulation in PURPA that defines or prohibits termination clauses in avoided cost contracts for qualifying utilities. Lastly, they complain about renewable energy credits. The Second Circuit and FERC have both held that renewable energy credits are separate from the issue of avoided cost, are a creature of state law, and are separately compensated. There is no basis for any claim of enforcement alleged against the CPUC. The way the district court did this, I'm not really clear on the procedural posture, but from reading the first decision, it seemed as though it dismissed CARES PURPA allegations without leave to amend on the sole basis of jurisdiction. Correct. And then it went on and said, well, we have jurisdiction over SFUI's claims, and SFUI is no longer a party in this, not in this appeal, and ruled on that. But did the district court ever actually make a ruling on the sufficiency of the allegations to state a claim by CARE in the alternative to its jurisdictional ruling? No. I think that determination was specific to SFUI's allegations. Procedurally, that's what's troubling me on this. If we were to decide that there wasn't a jurisdictional bar, then we would have to send it back to the district court to look at the allegations, to allow CARE to amend and to look at the allegations to see whether CARES allegations are sufficient to state a claim. Do you agree with that? I agree with that. I know it's technical. I agree with that in the event that the court does not dismiss it on alternate grounds. Yes. Okay. I'd like to next address the issue of whether or not the exhaustion provision is jurisdictional. In PURPA, Congress created a very unique and what the courts have characterized as an elaborate enforcement scheme. Congress expressly intended to limit the jurisdiction of the federal district courts and allowed state court to be the primary jurisdiction for the judicial review and enforcement of PURPA. That intent is reflected in sections 210G and 210H. In section 210H, Congress created a jurisdictional and statutory exhaustion provision that is unique to this statute and does not exist independently. Congress allowed in section 210H to be only certain plaintiffs to bring an action in federal district court and only after the plaintiff had first petitioned the FERC and FERC had declined to take any enforcement action on the petition within 60 days. This section, section 210H-2B, bears all the hallmarks of a jurisdictional provision as recognized by the Supreme Court in the Arbaugh case. It defines the parties who may bring a claim, the nature of the claim, when the claim may be bought, brought, and the remedies that may be received. Is Niagara the only case that considers that, that has considered that issue? And also the Wheeler-Brader case, I believe, in the District of Connecticut. There may be another. It's a district case, though. Pardon me? It's a district court case, right? It is a district court. The only other circuit court that's ruled is the Second Circuit in Niagara, correct? That is correct. And it seems like there the court has simply just reached a conclusion. I mean, there's very little analysis as I read that decision. Do you agree? I agree there is very little analysis in the Niagara case. And it doesn't seem, our precedent here in the Ninth Circuit seems a little bit more stringent or more searching than perhaps in the Second Circuit. Do you agree with that? Well, I agree that there is no analysis in that case, but I do agree with the Second Circuit that this provision is jurisdictional. This isn't the type of case where there's no congressional intent or the jurisdictional provision is located in a completely different section of the statute. The federal district court is vested with jurisdiction in the exact same provision, in the exact same section, in the same sentence that allows the private right of action. CARE tries to dismiss the exhaustion requirement as a FERC issuing a perfunctory or automatic right to sue letter. That is incorrect. The FERC, for example, has issued, as opposed to a notice of intent not to act, a notice of intent to act against a state commission with a declaratory order describing its position or simply a declaratory order to the parties describing FERC's analysis that could obviate the need for an enforcement action. But CARE has now filed for a right to sue letter, correct? I mean, they filed this suit first and then got a right to sue letter. They filed their petition for enforcement after I pointed out this defect in the meet and confer section discussions. Their enforcement petition was not even resolved at the time the First Amendment complaint was filed. I understand. Okay. And then after the district court dismissed their claim, CARE filed another petition with the FERC for enforcement against the CPUC. FERC dismissed that petition and termed it, quote, FERC has not identified any right or obligation enforceable under PURPA. I believe my time is up. If you have any questions? I don't think we have any further questions. Thank you. Thank you very much. Mr. Westreich, you have some rebuttal time. A few minutes. Yes. I think it's interesting that, by the way, it's the Middlesex case, it's a Supreme Court case that says that the term comprehensive is what governs whether you imply congressional intent not to exclude a 1982 claim. And it's interesting that counsel is up here. She didn't use the word comprehensive. She said unique and elaborate. And there's all this dancing around. But why doesn't, if we can meet the test of Middlesex, that it's comprehensive, then why didn't the district court say so? Why doesn't counsel say so? It's because they can't. Why did you file for a right to sue letter? Well, we did. On a petition. And before bringing this action. He did. He was doing improper, and he combined it with another document that he was submitting to FERC. And so they rejected the first one saying, you can't combine them. That's right. But we were not sure necessarily. It doesn't say in the code. And there's no regulation in FERC that says you can't do that. And if they don't act on it within 60 days, you don't actually need a right to sue letter with the FERC petition. Unlike some of the others, if they just don't do anything for 60 days, then you get the right to sue also. And we felt, actually, that that was adequate in what they did. But then when they raised it as an issue, we just, as an excess of caution, submitted another one. And by the time the court was ruling, the other one had already been issued. The letter had been issued from FERC saying that they were not going to act on the petition. So, you know, it wasn't. And on top of it, let's remember, we had non-PERPA claims that were also filing. We were also intent on having these plaintiffs filing together as a cost basis to meet the overwhelming cost of dealing with litigating against utilities in the state of California. And that's an imposing obligation for any private litigant to have to do that. And let's also... Let me ask you, because we're about out of time. What's your retaliatory motive that you claim violating your First Amendment rights? What evidence do you have of that? I mean, let me put it this way. What's their motive? What's the retaliatory motive? They got really aggravated over the constant stream of criticism that they got from CARE, who has participated in countless other, which you can do. You can submit... I mean, that's what a lot of citizens groups do and a lot of other groups. But some people are a little bit more in their criticism. They're a little bit more strident, perhaps. And that shouldn't be the distinction. All right. Thank you. Okay. Time's up, I believe. Well, not quite. The clock became muddled. Oh, okay. I'm just going to say one other thing. She was correct when she finally said that there was no ruling on anything on the proper claims of CARE after the jurisdictional decision. But the court did rule that those claims were adequately stated by SFUI, which were similar but not identical. And even on summary judgment, the court never addressed the merits because it decided belatedly that SFUI had no standing. Thank you. Thank you. Sorry about the clock. It was confusing to all of us. The case just argued is submitted, and we thank you for your argument.
judges: Mahan, Graber, Wardlaw